### ʃoseph Sears *vs.* Inhabitants of Charlemont.

Under a omplaint that a fence is out of repair, fence-viewers have no authority to assign to each of the owners of adjoining land his respective share of the fence, and to direct the building thereof within a specified time.

No action lies to recover upon an award of fence-viewers, under Gen. Sts. *c.* 25, §§ 3, 4, unless they have previously adjudicated that the existing fence was insufficient and illegal, and that the fence which the plaintiff has rebuilt is sufficient.

CONTRACT brought to recover double the amount awarded by fence-viewers as the value of a partition fence built by the plaintiff, and of their fees.

At the trial in the superior court, before *Vose*, J., it appeared that the plaintiff and defendants occupied adjoining lands in Charlemont, and that on the 31st of July 1860 the plaintiff made a verbal complaint to a fence-viewer of that town that the fence between the lands was out of repair and had been so for some time ; and thereupon, on the 9th of August 1860, the fence-viewer, with one of his associates, after a notice to the defendants respecting which the evidence was conflicting, went upon the premises and surveyed the fence and drew up and subscribed the following paper:

" Whereas a controversy has arisen between Joseph Sears ot Charlemont and the selectmen of said Charlemont about their respective rights in a partition fence on the line between their lands . . . . . we, the subscribers, fence-viewers, . . . . . having, on the application of said Sears, and after having given due notice to said selectmen, viewed the premises and duly considered the matter in dispute, have assigned and do hereby assign to each of the said parties his share of said fence as follows: . . . . and each party is to erect or repair his part of said fence within fifteen days from the date hereof."

The defendants did not erect or repair any part of the fencᴄ, and after the expiration of the fifteen days the plaintiff proceeded to erect or repair the part assigned to the defendants, naving already erected or repaired the part assigned to him ; and upon the application of the plaintiff, and after notice to the

defendants, the fence-viewers went upon the premises upon the 19th of September 1860, and drew up and signed the following paper:

"The undersigned, two fence-viewers of the town of Charlemont, duly chosen and sworn, having heretofore surveyed a certain fence . . . . . and having adjudged the same to be insufficient and illegal, did order and direct that the said town of Charlemont should repair or rebuild the same within fifteen days from the date of our order, and, the said town not having complied with said order, the said Joseph Sears at his own proper cost and charge has repaired and rebuilt the same, we now appraise the said fence at the sum of seven dollars and eighty-seven cents, and we certify that our fees are as follows," &c.

Various other facts appeared in the case, upon which questions arose which are now immaterial. The judge directed a verdict for the defendants, and the plaintiff alleged exceptions.

*G. T. Davis & S. T. Field,* for the plaintiff.

*D. Aiken,* for the defendants.

BIGELOW, C. J. The right of the plaintiff to recover in this action depends on the regularity and validity of the proceedings of the fence-viewers. If they have exceeded the authority and jurisdiction conferred on them by law, or have failed to comply with the provisions of the statute in any essential particular, their award is invalid, and the plaintiff cannot enforce it in an action at law. A special jurisdiction must be exercised within the boundaries prescribed by law, and no intendment can be made in support of the proceedings of a tribunal, which is clothed only with a limited authority.

Passing over several objections urged by the defendants to the doings of the fence-viewers, without expressing any opinion as to their validity, it appears to us that there are two fatal defects which are patent on the face of the proceedings. The first is, that the fence-viewers did not perform the duty or service required of them by the plaintiff in his complaint or application to them. By Gen. Sts. *c.* 25, §§ 3–6, the fence-viewers are empowered to act only in two classes of cases. One is by

§ 3, where a party refuses or neglects to repair or rebuild a partition fence which he ought to maintain. The other is by § 5 where a controversy arises about the rights of the respective occupants of adjoining lands or partition fences, and their obligation to maintain the same. The former class of cases arises only when the share or proportion of the fence which each party is bound to maintain and repair is ascertained and settled, and one of them fails to keep his part in sufficient repair. The latter class embraces all those cases where the fence has never been. divided between the adjoining owners, and the share which each ought to maintain and keep in repair is in dispute between them. On reference to the facts proved at the trial, it will appear that the plaintiff made a complaint to the fence-viewers, not that there was a controversy between him and the defendants about their respective rights in the partition fence and their obligation to maintain it, but that the old fence was out of repair. The fence-viewers, instead of acting on this complaint, which was the foundation of their jurisdiction in the premises under § 3, proceeded to adopt measures as if there had been an application to them to assign the share of the fence to each owner, and made an award in like manner as they should have done if there had been a controversy between the parties as to the share or part of the fence which each ought to rebuild or repair. Not only is it true that no application was made to the fence-viewers to assign to each owner his share of the fence as in a case of controversy concerning it between them, but it is also apparent, from the evidence adduced at the trial, that the partition fence had long previously been divided between the adjoining owners, and the proportion of each had been ascertained and settled. It is, therefore, clear that the fence-viewers had no authority or jurisdiction to proceed and make division of the fence between the parties, as they undertook to do by their award on the ninth day of August 1860, and their doings on that day were clearly erroneous and invalid.

The other defect is equally clear. The order made by the fence-viewers on the nineteenth day of September following, in which they award the sum which the defendants are to pay

to the plaintiff for repairing and rebuilding their share of the fence, is erroneous in two essential particulars. The first is, that it recites a previous adjudication by them that the partition fence was insufficient and illegal. No such adjudication had ever been made by them. The only previous proceeding by them was that already referred to, on the ninth day of August, in which they had assigned to each owner his share of the fence, under § 5 of the statute. But there had been no proceedings under § 3, in which the fence had been determined to be insufficient, which is clearly a prerequisite to their authority to adjudicate on the value of the repairs made by the plaintiff, and to authorize him to maintain an action to recover double the amount, under § 4 of the statute. The other omission is, that it does not appear that the fence-viewers, at any time before making their order on the nineteenth day of September, adjudged the fence which the plaintiff had rebuilt or repaired to be sufficient. This is also a condition precedent to the right of the plaintiff to recover any sum awarded by the fence-viewers. The statute is explicit on this point. It is only on such an adjudication, after due notice to the parties, that any right of action is given to the party who has caused the fence to be repaired and rebuilt. There is, therefore, no aspect of the case in which the plaintiff showed any title to recover in this action.

*Judgment on the verdict.*